**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CSX TRANSPORTATION, INC., <br><br> CSX INTERMODAL TERMINALS, INC., <br><br> NATIONAL RAILROAD PASSENGER CORPORATION (D/B/A AMTRAK), <br><br> and <br><br> SPRINGFIELD TERMINAL RAILWAY COMPANY <br><br> Plaintiffs, <br><br> v. <br><br> COMMONWEALTH OF MASSACHUSETTS OFFICE OF THE ATTORNEY GENERAL <br><br> and <br><br> MAURA HEALEY, in her official capacity as Attorney General, Commonwealth of Massachusetts, <br><br> Defendants. | Case No.: _____ <br><br> **COMPLAINT** |

**INTRODUCTION**

1. Plaintiffs CSX Transportation, Inc. ("CSXT"), CSX Intermodal Terminals, Inc. ("CSXIT"), National Railroad Passenger Corporation (d/b/a Amtrak) ("Amtrak"), and Springfield Terminal Railway Company ("Springfield Terminal") (collectively "Plaintiffs" or "the Railroads") seek a declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that the

Commonwealth of Massachusetts' "Earned Sick Time Law," M.G.L. c. 149, § 148C (the "Law"), is preempted, in whole or in part, by the Railroad Unemployment Insurance Act ("RUIA"), 45 U.S.C. § 351 *et seq.*, the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, and/or the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140 *et seq*. Plaintiffs also seek injunctive relief prohibiting Defendants from enforcing the Law with respect to Plaintiffs' employees.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1337 because it arises under an Act of Congress regulating commerce.

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to this action occurred in this judicial district and/or because the Defendants reside or are found in this judicial district.

## PARTIES

4. Plaintiff CSXT is a rail carrier as defined in the Interstate Commerce Act, as amended by the ICC Termination Act, 49 U.S.C. § 10102(5), a carrier as defined in Section 1, First of the RLA, 45 U.S.C. § 151, First, and an employer as defined in the RUIA, 45 U.S.C. § 351(a). CSXT is organized under the laws of the Commonwealth of Virginia, with its principal offices located at 500 Water Street, Jacksonville, Florida 32202. CSXT operates a rail transportation system in interstate commerce, including in the Commonwealth of Massachusetts. CSXT employs a number of individuals who work in the Commonwealth of Massachusetts.

5. Plaintiff CSXIT is a carrier as defined in Section 1, First of the RLA, 45 U.S.C. § 151, First, and an employer as defined in the RUIA, 45 U.S.C. § 351(a). CSXIT is organized

under the laws of the State of Delaware, with its principal offices located at 550 Water Street, Jacksonville, Florida 32202.  CSXIT operates intermodal terminals, including in the Commonwealth of Massachusetts, where containers and truck trailers are loaded and unloaded from railcars.  CSXIT is an affiliate of CSXT, and it employs a number of individuals who work in the Commonwealth of Massachusetts.

6. Plaintiff Amtrak is a rail carrier as defined in the Interstate Commerce Act, as amended by the ICC Termination Act, 49 U.S.C. § 10102(5), a carrier as defined in Section 1, First of the RLA, 45 U.S.C. § 151, First, and an employer as defined in the RUIA, 45 U.S.C. § 351(a).  Amtrak is headquartered in Washington, D.C.  Amtrak operates a rail transportation system in interstate commerce, including in the Commonwealth of Massachusetts.  Amtrak employs a number of individuals who work in the Commonwealth of Massachusetts.

7. Plaintiff Springfield Terminal is a rail carrier as defined in the Interstate Commerce Act, as amended by the ICC Termination Act, 49 U.S.C. § 10102(5), a carrier as defined in Section 1, First of the RLA, 45 U.S.C. § 151, First, and an employer as defined in the RUIA, 45 U.S.C. § 351(a).  Springfield Terminal is incorporated under the laws of the State of Vermont, with its principal offices located at 1700 Iron Horse Park, North Billerica, Massachusetts 01862.  Springfield Terminal operates a rail transportation system in interstate commerce, including in the Commonwealth of Massachusetts.  Springfield Terminal employs a number of individuals who work in the Commonwealth of Massachusetts.

8. Defendant Commonwealth of Massachusetts Office of the Attorney General (the "AG's Office") is led by the Attorney General.  The Attorney General is charged in the Law with creating rules and regulations regarding the portions of the Law at issue in this action, and with enforcing the portions of the Law at issue in this action.

9.      Defendant Maura Healey is the Commonwealth of Massachusetts' current Attorney General and is named in her official capacity.  As Attorney General, she is charged in the Law with creating rules and regulations regarding the portions of the Law at issue in this action, and with enforcing the portions of the Law at issue in this action.

## RAILROAD EMPLOYEE SICKNESS AND LEAVE BENEFITS

10.      Employees of railroads and affiliates of railroads, including CSXT, CSXIT, Amtrak, and Springfield Terminal, who work in Massachusetts, are eligible for sickness benefits coverage under the RUIA.  Under that statute, qualified employees may be entitled to up to twenty-six (26) weeks of compensation if temporarily unable to work due to illness, injury, or pregnancy.  RUIA sickness benefits are administered by an independent federal agency, the Railroad Retirement Board.

11.      Many of the employees of CSXT, CSXIT, Amtrak, and Springfield Terminal who work in Massachusetts are represented by various labor unions.  Pursuant to the RLA, the carriers bargain with these unions over rates of pay, rules, and working conditions, including various aspects of employee paid and unpaid leave.  Such collective bargaining has resulted in a variety of agreements on, among other subjects, paid and unpaid leave.

12.      Existing CSXT collective bargaining agreements concerning paid and unpaid leave vary by employee craft.  For example, locomotive engineers receive up to eleven (11) paid personal days per year that can be used for any purpose.  They also receive up to six (6) weeks of paid vacation which can be taken in one (1) day increments.  In addition, engineers receive eleven (11) paid holidays.  Conductors (who, together with the engineers, operate the trains) have similar leave rights under other collective bargaining agreements.

13. Existing Springfield Terminal collective bargaining agreements concerning paid and unpaid leave also vary by employee craft. For example, locomotive engineers receive up to four (4) paid personal days per year that can be used for any purpose. Locomotive engineers may also choose to bank their personal leave days and roll over up to a maximum of thirty (30) days. They also receive up to five (5) weeks of paid vacation. In addition, engineers receive eleven (11) paid holidays. Conductors (who, together with the engineers, operate the trains) have similar leave rights under other collective bargaining agreements.

14. Most CSXT and Springfield Terminal non-operating employees (also known as "support crafts") – including shopcraft employees, maintenance of way employees, signal repair employees – as well as Amtrak's on-board service employees are covered by "supplemental sickness benefit plans" which augment the sickness benefits payable under the RUIA. In general, a supplemental sickness benefit plan allows rail employees to receive a predetermined amount (equal to roughly 66% of full pay) for periods of time missed due to qualifying illness or injury, for up to a year. Some non-operating employees are also entitled to vacation, holidays, and personal leave benefits under other national agreements.

15. Unionized clerical employees of CSXT are entitled to RUIA sickness benefits and have paid sick day provisions which supplement these RUIA benefits. They are also entitled to paid personal days, vacation days, and holidays. Unionized clerical employees of Amtrak and Springfield Terminal are not covered by a supplemental sickness plan. Instead, they receive a set number of paid sick leave days (as well as vacations, holidays, and personal leave).

16. Unionized employees of CSXIT are eligible for up to twenty (20) paid sick days, five (5) weeks of paid vacation, and up to three (3) paid personal days. They are also covered by a supplemental sickness plan, which supplements sickness benefits under the RUIA.

17. During the last several rounds of collective bargaining, many of the railroad unions have proposed establishing or expanding paid sick leave benefits, in addition to the contractual and statutory benefits that railroad employees already receive. The unions have not, however, succeeded in obtaining such additional benefits at the bargaining table.

18. The major freight railroads, including CSXT, engage in multi-employer bargaining with the unions that represent their employees approximately every four to five years. The most recent round of national multi-employer bargaining started recently, with proposals for new agreements served between November 2014 and January 2015. The union demands in this round include requests for expansion of the employees' existing sick benefits, including paid sick leave days, improvements to the supplemental sickness plans, and/or an increased number of personal leave days.

19. Springfield Terminal engages in bargaining with the unions that represent its employees approximately every four to five years. The union demands in the most recent round of bargaining have included requests for expansion of the employees' existing sick benefits, including paid sick leave days, improvements to the supplemental sickness plans, and/or an increased number of personal leave days, vacation days, and holidays.

20. Amtrak recently initiated a new round of bargaining with the unions that represent its employees. The union demands include requests for expansion of the employees' existing sick benefits, including paid sick leave days, improvements to the supplemental sickness plans, and/or an increased number of personal leave days.

**THE NEW MASSACHUSETTS EARNED SICK TIME LAW**

21. On or about November 4, 2014, the voters of Massachusetts approved Massachusetts General Law Chapter 149, Section 148C ("M.G.L. c. 149 § 148C"), the

Massachusetts "Earned Sick Time Law" (the "Law"). The Law requires private employers with 11 or more employees to provide paid sick time to employees who work in Massachusetts.

22. The Law requires that employees accrue paid sick time at the rate of at least 1 hour for every 30 hours worked. Employees are allowed to carry over unused, accrued paid sick time from year to year, subject to a maximum cap of 40 hours; however, they are not allowed to use more than 40 hours of paid sick time in a calendar year. Employees are permitted to use paid sick time (in the smaller of hourly increments or the smallest increment that the employer's payroll system uses to account for absences or use of other time) to care for the employee's child, spouse, parent, or parent of a spouse who is suffering from a physical or mental illness, injury, or medical condition; to care for the employee's own physical or mental illness, injury, or medical condition; to attend the employee's routine medical appointments or routine medical appointments for the employee's child, spouse, parent, or parent of spouse; and to address the psychological, physical, or legal effects of domestic violence. Employees must make a "good faith effort" to provide advance notice to take leave. Employers may require certification for absences when an employee uses paid sick time to cover more than 24 consecutively scheduled work hours.

23. Employees begin accruing paid sick time on the date of hire or the date the Law comes into effect, whichever is later. The Law permits employees to begin using their paid sick time on the 90th day of employment.

24. The Law imposes various notice and recordkeeping obligations on employers.

25. The Law exempts employers who provide their employees with paid time off under a paid time off, vacation, or other paid leave policy, as long as the employers make available an amount of paid time off sufficient to meet the accrual requirements of the Law that

may be used for the same purposes, and under the same conditions, as earned paid sick time under the Law.

26.     The Law directs the Attorney General to create rules and regulations regarding the Law, and to enforce the Law through injunctive and declaratory relief.   There is also a private right of action to enforce the Law.

27.     The Law goes into effect on July 1, 2015.

28.     Although railroad employee sick leave benefits are very generous, those benefits are different in design and function than the kind of benefits contemplated by the Law, and thus at least some of Plaintiffs' employees do not currently receive paid sick leave that meets all of the requirements of the Law.

## THE CURRENT DISPUTE

29.     On June 17, 2015, representatives of CSXT hand-delivered a letter to the AG's Office, seeking confirmation from the AG's Office that the Law does not apply to the employees of CSXT and its affiliates working in Massachusetts.  The letter explained that all employees of railroads and their affiliates are exempt from the Law under the RUIA, the RLA, and/or ERISA.  On June 25, 2015, CSXT, through its counsel, provided additional information to the AG's Office about CSXT's legal position.

30.     On June 25, 2015, Amtrak sent a letter to the AG's Office, seeking confirmation from the AG's Office that the Law does not apply to the employees of Amtrak working in Massachusetts.  On June 26, 2015 Norfolk Southern Railway Company also sent a letter to the AG's Office, seeking confirmation that the Law does not apply to railroad employees working in Massachusetts.

31. The AG's Office has not made any substantive response to the inquiries from the Plaintiffs, and has not offered any assurances of the type sought by the Plaintiffs regarding the application of the Law to employees of railroads and their affiliates.

32. CSXT, CSXIT, Amtrak, and Springfield Terminal will not implement or otherwise comply with the Law when it goes into effect on July 1, 2015. The Law permits individual employees to file suit in court to enforce their rights under the Law. Because CSXT, CSXIT, Amtrak, and Springfield Terminal have employees in Massachusetts, and because Defendants have failed or refused to disclaim an intent to enforce the Law against them, CSXT, CSXIT, Amtrak, and Springfield Terminal face a substantial threat of imminent prosecution.

## **COUNT ONE**

33. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 32.

34. The Supremacy Clause of the United States Constitution provides that federal law is the "supreme Law of the Land," and therefore it preempts state and local laws that interfere with or are contrary to federal law.

35. The RUIA expressly provides that "[b]y enactment of this chapter the Congress makes ***exclusive provision*** . . . for the payment of sickness benefits for sickness periods after June 30, 1947, based upon employment (as defined in this chapter)." 45 U.S.C. § 363(b) (emphasis added). It further states that "Congress finds and declares that by virtue of the enactment of this chapter, the application of . . . State sickness laws after June 30, 1947, to such employment, except pursuant to section 362(g) of this title, would constitute an undue burden upon, and an undue interference with the effective regulation of, interstate commerce." *Id.* The RUIA therefore preempts any other laws that require sickness benefits or compensation for railroad employees.

9

36. Because the RUIA expressly preempts other laws that mandate sickness benefits or compensation for employees of railroads and their affiliates, the Law is preempted. Because Defendants have failed or refused to confirm that this is so, the Plaintiffs are entitled to a declaratory judgment establishing that they are not subject to the Law.

## COUNT TWO

37. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 36.

38. The RLA governs labor relations in the railroad and airline industries. The purposes of the RLA include, *inter alia*, to "avoid any interruption to commerce or to the operation of any carrier engaged therein," and "to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions." 45 U.S.C. § 151a.

39. The RLA prohibits changes in rates of pay, rules, and working conditions, as embodied in agreements, except through the collective bargaining procedures of the Act. 45 U.S.C. § 152 Seventh.

40. In enacting the RLA, Congress intended to leave settlement of all disputes over proposed changes in rates of pay, rules, and working conditions to collective bargaining. Accordingly, state and local laws that purport to mandate changes to rates of pay, rules, and working conditions are preempted unless such laws impose only "minimum labor standards" that do not conflict with the goals of federal labor law.

41. The Law conflicts with federal labor policy as embodied in the RLA to the extent that it requires CSXT, CSXIT, Amtrak, and Springfield Terminal to change rates of pay, rules, and working conditions in a fashion that has not been negotiated through the processes mandated by the RLA. The Law is not a minimum labor standard because it imposes terms that unions have sought unsuccessfully in collective bargaining with the Plaintiffs, sets standards that exceed

10

existing state and federal law, is not of general application, and otherwise discourages and interferes with collective bargaining under the RLA.

42.     By dictating a result that alters the outcome of the Plaintiffs' past and ongoing collective bargaining negotiations, the Law deprives the Plaintiffs of an equitable bargaining process, and otherwise interferes with their rights under the RLA.  It is therefore preempted by the RLA.  Because the Defendants have failed or refused to confirm that this is so, the Plaintiffs are entitled to a declaratory judgment establishing that they are not subject to the Law.

## COUNT THREE

43.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 42.

44.     Section 1144(a) of ERISA provides that it shall preempt any state or local law that "may . . . relate to any employee benefit plan . . . ."

45.     The Plaintiffs' supplemental sickness benefit plans are subject to ERISA and qualify as "employee benefit plan[s]" within the meaning of § 1144(a) of ERISA.  The Law conflicts with or would alter the terms of the supplemental sickness benefit plans.

46.     Their health care insurance plans are also subject to ERISA and qualify as "employee benefit plan[s]" within the meaning of § 1144(a) of ERISA.  The Law conflicts with or would alter the terms of their health care insurance plans to the extent that the Law requires the provision of employee health care benefits to employees while utilizing paid leave under the Law.

47.     The provisions of the Law that conflict with or otherwise "relate to" the Plaintiffs' supplemental sickness benefit plans and/or their health care insurance plans are preempted under § 1144(a) of ERISA.  Because the Defendants have failed or refused to confirm that this is so,

the Plaintiffs are entitled to a declaratory judgment establishing that they are not subject to the Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask for judgment against Defendants, and respectfully pray that the Court:

A. Issue a judgment declaring that:

1. Massachusetts' Earned Sick Time Law, M.G.L. c. 149, § 148C, is preempted by the Railroad Unemployment Insurance Act and thus does not apply to individuals employed by the Plaintiffs; and

2. Massachusetts' Earned Sick Time Law, M.G.L. c. 149, § 148C, is preempted by the Railway Labor Act to the extent it would require the Plaintiffs to provide benefits to their unionized employees that were not bargained for between the parties through the procedures established by the Railway Labor Act and thus does not apply to individuals employed by the Plaintiffs; and

3. Massachusetts' Earned Sick Time Law, M.G.L. c. 149, § 148C, is preempted by the Employee Retirement Income Security Act to the extent it relates to employee benefit plans maintained by the Plaintiffs, and thus does not apply to individuals employed by the Plaintiffs.

B. Enjoin the Defendants from enforcing or otherwise applying the Law against the Plaintiffs; and

C. Issue such other relief as the Court may deem just and appropriate.

Dated:  June 30, 2015.

                         Respectfully submitted,

By:   */s/ Jonathon H. Roth*
       Jonathon H. Roth (MA Bar No. 684601)
       John D. Hanify (MA Bar No. 219880)
       JONES DAY
       100 High Street
       Boston, MA  02110
       (617) 449-6906
       (617) 449-6999 Facsimile
       jhanify@jonesday.com
       jhroth@jonesday.com

       Donald J. Munro (D.C. Bar No. 453600)*
       Emily F. Melson (D.C. Bar No. 1023574)*
       JONES DAY
       51 Louisiana Avenue, NW
       Washington, DC  20001
       (202) 879-3922
       (202) 626-1700 Facsimile
       dmunro@jonesday.com
       emelson@jonesday.com

*Pro hac vice* motions forthcoming

**ATTORNEYS FOR PLAINTIFFS CSX TRANSPORTATION, INC., CSX INTERMODAL TERMINALS, INC., NATIONAL RAILROAD PASSENGER CORPORATION, AND SPRINGFIELD TERMINAL RAILWAY COMPANY**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2015, I electronically filed the foregoing Complaint using the Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to the parties indicated on the electronic filing receipt.

*/s/ Jonathon H. Roth*
Jonathon H. Roth