**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| CSX TRANSPORTATION, INC., CSX INTERMODAL TERMINALS, INC., NATIONAL RAILROAD PASSENGER CORPORATION and SPRINGFIELD TERMINAL RAILWAY COMPANY,<br><br>            Plaintiffs,<br><br>      v.<br><br>MAURA HEALEY,<br><br>            Defendant. | Civil Action No.<br>15-12865-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

    This case arises from allegations that the Massachusetts Earned Sick Time Law ("ESTL") at M.G.L. c. 149 § 148C, approved by Massachusetts voters in 2014, is preempted by three federal statutes.

    Pending before the Court are three motions for partial summary judgment on Count 1 which asserts that the ESTL is expressly preempted by the Railroad Unemployment Insurance Act ("RUIA"), 45 U.S.C. § 351, et seq..  For the reasons that follow, the motion for partial summary judgment by plaintiffs will be allowed and the motions for partial summary judgment by defendant and the intervening unions will be denied.

## I.    <u>Background and procedural history</u>

Plaintiffs CSX Transportation, Inc., CSX Intermodal Terminals, Inc., National Railroad Passenger Corporation d/b/a Amtrak and Springfield Terminal Railway Company (collectively, "CSX" or "plaintiffs") are operators of rail transportation systems and intermodal terminals located in Massachusetts.  The parties agree that all plaintiffs are "employers" within the meaning of the RUIA and all individuals employed by them in Massachusetts are "employees" and thus eligible for federal statutory "sickness benefits" under the RUIA.

Defendant Maura Healey ("Healey" or "defendant") is the Attorney General of the Commonwealth of Massachusetts and is named in her official capacity.  As Attorney General, she is charged with the rulemaking for, and enforcement of, the purportedly preempted portions of the ESTL.

The intervening parties are the Transportation and Mechanical Divisions of the International Association of Sheet Metal, Air, Rail and Transportation Workers, the Brotherhood of Locomotive Engineers and Trainmen, the International Brotherhood of Electrical Workers, the National Conference of Firemen & Oilers District of Local 32BJ, SEIU, the Brotherhood of Railroad Signalmen and the Brotherhood of Maintenance of Way Employes Division/IBT (collectively, "the union intervenors").  They are

the collective bargaining representatives for the employees who would be affected by the relief sought by plaintiffs.

The United States ("the federal government") is an interested party which submitted a "statement of interest" in this action to set forth its position concerning the effect of the express preemption provision of the RUIA on the ESTL. The federal government claims to have a "substantial interest" in ensuring that the scope of that RUIA provision does not "unduly interfere" with the traditional police powers of the states to establish minimum labor standards.

The parties agree that in November, 2014, Massachusetts voters approved the Massachusetts Earned Sick Time Law at M.G.L. c. 149, § 148C which requires certain employers to provide "earned paid sick time" to qualifying employees in Massachusetts. That law became effective on July 1, 2015. Plaintiffs have not implemented or complied with the ESTL because they believe that it is preempted by federal law. Defendant has declined their request to "provide a permanent commitment not to enforce" the ESTL against them.

Plaintiffs initiated this action by filing a complaint against Healey and the Massachusetts Office of the Attorney General in June, 2015 and an amended complaint naming Healey as the sole defendant in November, 2015. Plaintiffs seek declaratory judgments that the ESTL is preempted by the RUIA

(Count 1), the Railway Labor Act ("RLA") at 45 U.S.C. § 151, et seq. (Count 2) and the Employee Retirement Income Security Act ("ERISA") at 29 U.S.C. § 1140, et seq. (Count 3).  Plaintiffs also seek to enjoin Healey from enforcing or applying the ESTL against them.

In February, 2016, this Court convened a scheduling conference during which the parties agreed to bifurcate the action and litigate the RUIA claim in Phase 1 and the RLA and ERISA claims in Phase 2.

Plaintiffs moved for summary judgment on the RUIA claim in March, 2016.  The Court allowed the union intervenors to participate in the action and move for summary judgment on the RUIA claim in May, 2016.  Defendant submitted a motion for summary judgment on the same claim shortly thereafter.  The parties stipulated that there are no material facts in dispute. The Court convened a hearing on those motions in July, 2016.

## II.  **Motions for summary judgment**

### A.  **Legal standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits,

"that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B.   Application**

**1.   Express preemption**

The Supremacy Clause of the United States Constitution provides that

the laws of the United States . . . shall be the supreme
law of the land . . . any Thing in the Constitution or
laws of any State to the contrary notwithstanding.

U.S. CONST. art. VI, cl. 2.  State laws which conflict with
federal law are preempted and "without effect". Altria Grp.,
Inc. v. Good, 555 U.S. 70, 76 (2008).

Congressional purpose is the "ultimate touchstone" in every
preemption case. Id.  A court considering the preemptive effect
of an express preemption clause in a federal statute must assess
the substance and scope of Congress's displacement of state law,
id., in order to identify the matters that it did and did not
intend to preempt, Lorillard Tobacco Co. v. Reilly, 533 U.S.
525, 541 (2001).  The inquiry commences with the statutory
language "which necessarily contains the best evidence of
Congress' pre-emptive intent". CSX Transp., Inc. v. Easterwood,
507 U.S. 658, 664 (1993).  The court may also consider the
purpose, history and surrounding statutory scheme of the express
preemption clause. Mass. Delivery Ass'n v. Coakley, 769 F.3d 11,
17 (1st Cir. 2014).

If the preemption inquiry implicates the historic police
powers of the state or a field traditionally occupied by the
states, the court must apply the presumption against preemption
which can be overcome by a finding of clear and unambiguous
congressional intent to preempt state law. Altria, 555 U.S. at
77.

### 1.   Railroad Unemployment Insurance Act

Congress enacted the first version of the Railroad Unemployment Insurance Act in 1938 to establish a system of unemployment insurance for covered employees. R.R. Ret. Bd. v. Duquesne Warehouse Co., 326 U.S. 446, 448 (1946).  It amended the statute in 1946 to provide qualified employees with "unemployment benefits" and "sickness benefits" which would both be administered by the Railroad Retirement Board ("RRB"), § 352, and funded by contributions from employers, § 358.

The amended statute defines "benefits" as monetary payments to an employee with respect to his or her unemployment or sickness and sets the daily benefits rate at 60% of his or her daily rate of compensation at the last position held. § 351(l)(1)(benefits); § 352(a)(2)(daily benefit rate).  A qualified employee is entitled to "sickness benefits" which are

> benefits . . . for each day of sickness after the 4th consecutive day of sickness in a period of continuing sickness[.]

§ 352(a)(1)(B)(i).

A "period of continuing sickness" is a period of 1) consecutive days of sickness or 2) successive days of sickness "due to a single cause without interruption of more than 90 consecutive days which are not days of sickness." § 352(a)(1)(B)(iii).

A "day of sickness" is a day on which the employee cannot work due to a physical, mental, psychological, nervous or pregnancy-related injury, sickness or condition <u>and</u> does not accrue or receive "remuneration". § 351(k).  The term "remuneration" 1) means "pay for services for hire", 2) includes earned income other than services for hire if the employee accrued it with respect to a particular day or days and 3) excludes money payments received pursuant to non-governmental plans for unemployment, maternity or sickness insurance. § 351(j).  An employee does not experience a "day of sickness" if he or she receives or will receive unemployment, maternity or sickness benefits under any other unemployment, maternity or sickness compensation law. § 354(a-1)(ii).

Section 363(b) of the RUIA contains an express preemption provision.  The first two sentences of § 363(b), titled "Effect on State unemployment compensation laws", state that:

> Congress makes exclusive provision for . . . the payment of sickness benefits for sickness periods after [1947], based upon employment (as defined in this chapter).  No employee shall have or assert any right to . . . sickness benefits under a sickness law of any State with respect to sickness periods occurring after [1947], based upon employment (as defined in this chapter).

§ 363(b).  The statute defines "employment" to mean "service performed as an employee". § 351(g).

The third sentence in § 363(b) specifies that:

> Congress finds and declares that by virtue of the enactment of this chapter, the application of . . . State sickness laws after [1947], to such employment, except pursuant to [§ 362(g)], would constitute an undue burden upon, and an undue interference with the effective regulation of, interstate commerce.

§ 363(b). Section 362(g) sets forth a system of "mutual reimbursement [of] . . . [b]enefits also subject to a State law" under which the RRB and states can reimburse each other for any unemployment or sickness benefits paid to qualifying employees under the RUIA or state unemployment or sickness compensation laws for "services for hire other than employment". § 362(g).

## 2.    Massachusetts Earned Sick Time Law

The Massachusetts Earned Sick Time Law entitles qualified employees who work in the Commonwealth to accrue "earned sick time" at the rate of one hour for every thirty hours worked and to use that time 1) to care for themselves or their family members, 2) to attend their or their family members' routine medical appointments or 3) to address the psychological, physical or legal effects of domestic violence. M.G.L. c. 149, §§ 148C(b), (c), (d)(1). Qualified employees can earn and use up to 40 hours of either "earned paid sick time" or "earned unpaid sick time" every calendar year. §§ 148C(d)(4), (6). Covered employers must compensate qualified employees for "earned paid sick time" at their regular hourly rates of compensation. § 148C(a).

### 3.   Scope of RUIA preemption

The parties dispute the scope of the express preemption clause in the RUIA and whether the ESTL falls within the preempted domain.

### a.   Arguments by plaintiffs

Plaintiffs assert that the text of the preemption clause is clear that the preempted domain includes all "sickness benefits" received by employees as "income replacement for periods during which [they are] absent due to any illness or injury". Plaintiffs point to other references to "sickness" and "sickness benefits" in the RUIA and assert that, because receipt of remuneration disqualifies employees from experiencing the pre-requisite "day of sickness", any kind of state payment or benefit, including "earned paid sick time" within the meaning of the ESTL, operates as a "de facto substitute for RUIA benefits".

Plaintiffs thus contend that the text reflects Congress's clear intent that employees should not receive both paid sick leave from the state and RUIA benefits.  They declare that, although the ESTL entitles employees to sickness payments under different parameters, the ESTL provides "sickness benefits" that fall within the domain of the RUIA preemption clause.

They further submit that the legislative history and purpose of the statute confirm that Congress intended to preempt state laws such as the ESTL.  They offer statements made by

-10-

union representatives and an RRB Chairman during congressional hearings, as well as excerpts from the Senate Report on the 1946 amendments, to show the RUIA was intended to address the need for "uniform federal regulation of the national railroad system, especially with respect to employment benefits" because labor agreements in the transportation industry frequently cut across state lines. Plaintiffs claim that Congress and the railroads entered into an "implicit labor-management agreement", as reflected in the RUIA preemption clause, that the railroads would provide federal unemployment and sickness benefits but need not provide those mandated by states.

Plaintiffs thus suggest that the "core legislative purpose" of both the RUIA and ESTL is to require employers to provide "income replacement" to employees who cannot work due to illness or injury. They conclude that Congress intended the RUIA to preempt the ESTL.

b.   **Arguments by defendant Healey, the union intervenors and the federal government**

Defendant Healy, the union intervenors and the federal government respond that there is no congressional intent, clear or otherwise, for the RUIA to preempt state laws such as the ESTL.

Healey first claims that the domain of preempted state laws is limited to instances in which "the worker is unemployed due

to sickness and not receiving pay from the railroad" because 1) the first two sentences of § 363(b) indicate that the preemption provision concerns the payment of "sickness benefits" for "sickness periods", 2) the term "sickness period" is equivalent to a "period of sickness" which is a series of "days of sickness" and 3) a "day of sickness" excludes a day on which the employee receives or accrues remuneration from the railroad employer or another source.

She submits that the RUIA is an "off-payroll" statute providing workers who fall ill and become unemployed with reduced monetary benefits over a set period, while the ESTL is an "on-payroll" law ensuring that workers who remain employed continue receiving regular compensation even if they cannot work as a result of their own health or the health of their family member. She concludes that the RUIA 1) preempts state laws providing benefits that, unlike those provided by the ESTL, commence only when "the worker is no longer working and receiving a paycheck", 2) does not cover workers who remain employed and receive monetary benefits or earned compensation from their employers and thus 3) does not preempt the ESTL. The union intervenors and federal government advance similar arguments.

The union intervenors and federal government also point out that the statutory language of the RUIA makes no reference to,

and thus evinces no congressional intent to preempt, the provision of sickness benefits to employees who cannot work due to the illnesses or sicknesses of their family members. Plaintiffs respond that the RUIA preempts the payment of all sickness benefits and all monetary payments for health-related absences from work, regardless of whether the absence is caused by the employee or a family member.

In addition, Healey asserts that Congress did not intend the RUIA to preempt state laws such as the ESTL because the third sentence in § 363(b) "specifically anticipates the continued existence" of such state laws by referring to § 362(g) which authorizes mutual reimbursements in the event that RUIA-eligible workers receive state sickness benefits and state-sickness-eligible workers receive RUIA benefits.  She also suggests that the third sentence does not relate to preemption at all and is instead "a statutory statement of a Congressional finding" for courts to consider in cases implicating the Dormant Commerce Clause, see § 363(b) (finding that the application of "state sickness laws . . . would constitute an undue burden upon, and an undue interference with the effective regulation of, interstate commerce").

Plaintiffs respond by faulting Healey, the union intervenors and the federal government for "[tying] themselves in knots trying to avoid the plain meaning of § 363(b)" and

improperly assuming that "the benefits provided by the RUIA
should define the scope of the benefits preempted".  Plaintiffs
maintain that the phrase "Congress makes exclusive provision for
. . . the payment of sickness benefits" reflects a clear intent
that the RUIA be the exclusive source of all statutory sickness
benefits, not just RUIA-like benefits, for railroad employees.
They proclaim that the RUIA does not distinguish between "on-
payroll" and "off-payroll" employees because it provides
benefits to "any" qualified worker who is employed but
temporarily unable to work.  They claim that the § 363(b)
references to mutual reimbursement merely recognize that
railroad employees sometimes receive state sickness benefits
based on "non-railroad employment" and do not contradict the
plain language of § 363(b).

     Healey and the federal government reply that even if there
was some congressional intent for RUIA to preempt state laws
such as the ESTL, the intent was not sufficiently "clear and
manifest" to overcome the presumption against preemption, see
Wyeth v. Levine, 555 U.S. 555, 565 (2009)(describing the
presumption against preemption under which federal statutes
preempt state law only if that was the "clear and manifest
purpose of Congress").  They explain that the presumption
against preemption applies because the United States Supreme
Court ("the Supreme Court") has found that 1) the presumption

against preemption applies in all preemption cases, especially if Congress legislated in a field historically occupied by the states, id., and 2) the establishment of labor standards falls within a field traditionally occupied by the states, Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 21 (1987); Metro. Life Ins. Co. v. Mass., 471 U.S. 724, 756 (1985).

Plaintiffs rejoin that the Court should not apply the presumption against preemption in this case because courts in other circuits have carved out exceptions for railroad preemption cases in light of "the federal government's historic regulation of the railroad system", see In re Rail Freight Fuel Surcharge Antitrust Litig., 593 F. Supp. 2d 29, 37 n.4 (D.D.C. 2008), aff'd sub nom. Fayus Enters. v. BNSF Ry. Co., 602 F.3d 444 (D.C. Cir. 2010); CSX Transp., Inc. v. City of Plymouth, 92 F. Supp. 2d 643, 648 (E.D. Mich. 2000), aff'd, 283 F.3d 812 (6th Cir. 2002).  They also note that the First Circuit Court of Appeals ("the First Circuit") does not apply the presumption against presumption in air transportation cases, which they analogize to railroad transportation cases, because the "longstanding and pervasive" federal presence demonstrates that the field is "simply not one traditionally reserved to the states". Brown v. United Airlines, Inc., 720 F.3d 60, 68 (1st Cir. 2013).

Healey and the union intervenors declare that although the statutory text is dispositive on the issue of Congress's intent, the legislative history confirms that Congress intended the RUIA to apply to sickness benefits for unemployed workers only. They submit that the legislative history supports their argument that the RUIA does not preempt state laws providing sickness benefits for employed workers.

The union intervenors and federal government cite the Senate Report on the 1946 RUIA amendments which described the sickness benefits provisions as authorizing

> benefits under the Unemployment Insurance Act for unemployment due to sickness . . . [because t]here is no essential difference in principle between the compensability of unemployment due to lack of a job and the compensability of unemployment due to sickness.

S. Rep. 79-1710, at 5 (1946). Plaintiffs parry that the term "unemployment" has no practical or legal significance with respect to the nature of the sickness benefits provided by the RUIA given that the RUIA originated as an unemployment statute. They claim that an employee must qualify for unpaid leave but need not be entitled to RUIA benefits.

The federal government directs the Court's attention to the Senate Supplemental Report which states that

> Section 13(b) . . . preempts to the Federal Government the field of railroad unemployment insurance so as to exclude State unemployment compensation laws from the field and thus to protect employers from duplicate liability. The amendments made by the section of the

> bill extend that preemption to the <u>sickness benefits
> provided by the bill</u>.

S. Rep. 79-1710, pt. 2, at 26 (1946)(emphasis added).  It

proffers that excerpt as "unambiguous" evidence that Congress

intended to limit the preempted domain to state laws providing

the same kind of sickness benefits available under the RUIA,

which would exclude the ESTL from the domain, rather than to

"all state sickness laws" as suggested by plaintiffs which would

include the ESTL in the domain.  The federal government

concludes that it is clear that Congress did not intend the RUIA

to preempt state laws such as the ESTL.

Healey dismisses plaintiffs' citations to the legislative

history as consisting entirely of statements by "lobbyists" and

"non-legislators" such as union representative Lester Schoene

and former RRB Chairman Murray Latimer.  The union intervenors

add that those individuals state elsewhere in the congressional

record that the proposed amendments were intended to provide

benefits for "unemployment due to sickness", a phrase that the

union intervenors proffer as further evidence that the RUIA

preempts state benefits for unemployed workers only and not

employed workers who take temporary absences.  Healey, moreover,

rejects plaintiffs' assertions of an "implicit labor-management

agreement" as unsupported in the legislative history.

Healey, the union intervenors and the federal government conclude that the statutory text, purpose and legislative history confirm that Congress did not intend the RUIA to preempt state laws such as the ESTL.

### c.  Findings by the Court

After careful consideration of the arguments presented, the Court concludes that the statutory text of the RUIA reflects the congressional intent that the RUIA preempt <u>all</u> state laws, including the ESTL, which provide sickness-related benefits to railroad workers who cannot work for sickness-related reasons.

The first inquiry is whether the presumption against preemption applies in preemption cases involving railroad labor standards.  That issue is a matter of first impression in the First Circuit. <u>See</u> <u>Padgett</u> v. <u>Surface Transp. Bd.</u>, 804 F.3d 103, 108-09 (1st Cir. 2015) (declining to decide whether the presumption against preemption applies to railroad health and safety regulations).

This Court finds that the presumption against preemption does not apply in preemption cases involving the establishment of railroad labor standards.  The First Circuit has carved out "matters of air transportation" as a field in which the presumption against preemption does not apply. <u>Brown</u>, 720 F.3d at 68.  In <u>Brown</u> v. <u>United Airlines, Inc.</u>, 720 F.3d 60 (1st Cir. 2013), the First Circuit held that

-18-

the presumption against preemption only arises . . . if
Congress legislates in a field traditionally occupied by
the states.  In matters of air transportation, the
federal presence is both longstanding and pervasive;
that field is simply not one traditionally reserved to
the states.  The Supreme Court has not suggested that
the presumption against preemption should be interposed
in that field, nor has the Court been hesitant to give
force to the ADA preemption provision.  We see no reason
to hesitate here.

720 F.3d at 68 (internal citations and quotation marks omitted).

Likewise, the "longstanding and pervasive" federal regulation of

labor standards in the railroad transportation industry

signifies that the field of railroad labor standards "is simply

not one traditionally reserved to the states".  See id.  The

presumption against preemption, therefore, does not apply.

That finding does not contravene the principles set forth

in Wyeth v. Levine, 555 U.S. 555 (2009).  In Wyeth, the Supreme

Court found that

[i]n all pre-emption cases, and particularly in those in
which Congress has legislated . . . in a field which the
States have traditionally occupied, . . . we start with
the assumption that the historic police powers of the
States were not to be superseded by the Federal Act
unless that was the clear and manifest purpose of
Congress.

555 U.S. at 565 (internal quotation marks omitted).  A footnote

in the decision clarifies that the standard for applying the

presumption against preemption turns on the historic presence of

state law in the field, not the absence of federal regulation.

Id. at 565 n.3.  That clarification is consistent with the

finding of this Court that, due to the traditional federal presence, there has been no historic state presence in the field of railroad labor standards and thus the presumption does not apply in those preemption cases.

Nor does the finding by this Court run afoul of the Supreme Court's decision in CSX Transp., Inc. v. Easterwood, 507 U.S. 658 (1993).  The Easterwood case concerned the preemptive effect of § 434 of the Federal Railroad Safety Act ("FRSA") of 1970 which provided that federal regulations may preempt state laws relating to railroad safety. Easterwood, 507 U.S. at 664.  The Supreme Court found that 23 C.F.R. pt. 924, which permitted states to obtain federal funds if they justified their spending, did not preempt state negligence laws requiring railroads to maintain safe crossings. Id. at 667-68.  It explained:

> In light of the relatively stringent standard set by the language of § 434 and the presumption against pre-emption, and given that the regulations provide no affirmative indication of their effect on negligence law, we are not prepared to find pre-emption solely on the strength of the general mandates of 23 CFR pt. 924.

Id. at 668.  This Court does not read that narrow finding to require the application of the anti-preemption presumption in preemption cases concerning railroad labor standards, a field in which Congress has legislated since at least 1938. See Duquesne, 326 U.S. at 448 (finding that Congress enacted the first version of the RUIA in 1938).

In any event, the Court finds that the statutory text of the RUIA reflects clear congressional intent that the RUIA preempt all state laws, including the ESTL, that relate to sickness benefits for railroad workers.

The first two sentences of the RUIA preemption provision in § 363(b) indicate that Congress, in enacting the RUIA, made "exclusive provision" for the payment of "sickness benefits for sickness periods" and prohibited employees from asserting rights to "sickness benefits under a sickness law of any State with respect to sickness periods". § 363(b).  The plain textual meaning is clear: Congress intended the RUIA to serve as the "exclusive" source of all sickness benefits for railroad employees and to preclude the employees from claiming rights to sickness benefits under any state sickness law.

The general and unqualified references to "sickness benefits" and "sickness law" demonstrate that Congress intended the express preemption provision to apply to all state sickness benefits and sickness laws, not just state sickness benefits which duplicate the RUIA's benefits and state sickness laws which exactly replicate the RUIA.  There is no indication in the ordinary meaning of the statutory language that Congress intended to limit the scope of the express preemption clause to state laws offering benefits identical to RUIA benefits.

A plain reading of the third sentence of § 363(b) confirms those findings.  It clearly states that the application of state unemployment and sickness laws to RUIA-qualifying employment would unduly burden, and unduly interfere with the effective regulation of, interstate commerce. § 363(b).  The Court is persuaded by plaintiffs that the text references § 362(g) and its system of mutual reimbursement in recognition of the possibility that railroad workers may receive sickness benefits based on non-railroad employment, rather than in anticipation of state sickness laws such as the ESTL.  This Court concludes that Congress reasonably intended that all state sickness laws, without qualification, would unduly burden and interfere with federal regulation and should thus be preempted.

In sum, the statutory text of the RUIA reflects the clear intent of Congress to preempt all state sickness-related laws which include the ESTL.  If Congress had intended otherwise, it could have used language which clearly and directly restricted the scope of RUIA preemption. See Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter, 135 S. Ct. 1970, 1977 (2015)("If Congress had meant to make such a change, we would expect it to have used language that made this important modification clear to litigants and courts."); Franklin Cal. Tax-Free Trust v. Puerto Rico, 805 F.3d 322, 338 (1st Cir. 2015)("If Congress had wanted to exclude Puerto Rico from

§ 903(1), it would have done so directly without relying on the creativity of parties arguing before the courts.").

The Court declines to rely upon the legislative history because its finding on the plain textual meaning of the RUIA which "necessarily contains the best evidence of Congress' pre-emptive intent", see Easterwood, 507 U.S. at 664, is dispositive.

Accordingly, plaintiffs' motion for summary judgment with respect to the RUIA claim will be allowed.  The motions for summary judgment of defendant and the union intervenors as to the RUIA claim will be denied.

### ORDER

For the foregoing reasons, plaintiffs' motion for summary judgment on Count 1 (Docket No. 29) is **ALLOWED**, defendant's motion for summary judgment on Count 1 (Docket No. 45) is **DENIED** and the union intervenors' motion for summary judgment on Count 1 (Docket No. 48) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 13, 2016