United States District Court
District of Massachusetts

| | |
|---|---|
| CSX TRANSPORTATION, INC., CSX INTERMODAL TERMINALS, INC., NATIONAL RAILROAD PASSENGER CORPORATION and SPRINGFIELD TERMINAL RAILWAY COMPANY,<br><br>    Plaintiffs,<br><br>    v.<br><br>MAURA HEALEY,<br><br>    Defendant,<br><br>and<br><br>BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, ET AL.<br><br>    Intervenors. | Civil Action No.<br>15-12865-NMG |

## MEMORANDUM & ORDER

**GORTON, J.**

This case arises from allegations that the Massachusetts Earned Sick Time Law ("ESTL") at M.G.L. c. 149 § 148C, approved by Massachusetts voters in 2014, is preempted by three federal statutes.

Pending before the Court are three renewed cross-motions filed by the plaintiffs, the defendant and the intervenors for summary judgment on Count 1 which asserts that the ESTL is expressly preempted by the Railroad Unemployment Insurance Act

-1-

("RUIA"), 45 U.S.C. § 351, et seq. For the reasons that follow, the motion for partial summary judgment by plaintiffs will be allowed and the motions for partial summary judgment by defendant and the intervening unions will be denied.

## I. Background and Procedural History

Plaintiffs CSX Transportation, Inc., CSX Intermodal Terminals, Inc., National Railroad Passenger Corporation d/b/a Amtrak and Springfield Terminal Railway Company (collectively, "CSX" or "plaintiffs") are operators of rail transportation systems and intermodal terminals located in Massachusetts. The parties agree that all plaintiffs are "employers" within the meaning of the RUIA and all individuals employed by them in Massachusetts are "employees" and thus eligible for federal statutory "sickness benefits" under the RUIA.

Defendant Maura Healey ("Healey" or "defendant") is the Attorney General of the Commonwealth of Massachusetts and is named in her official capacity. As Attorney General, she is charged with the rulemaking for, and enforcement of, the purportedly preempted portions of the ESTL.

The intervening parties are the Transportation and Mechanical Divisions of the International Association of Sheet Metal, Air, Rail and Transportation Workers, the Brotherhood of Locomotive Engineers and Trainmen, the International Brotherhood of Electrical Workers, the National Conference of Firemen &

Oilers District of Local 32BJ, SEIU, the Brotherhood of Railroad Signalmen and the Brotherhood of Maintenance of Way Employes Division/IBT (collectively, "the union intervenors").  They are the collective bargaining representatives for the employees who would be affected by the relief sought by plaintiffs.

The parties agree that in November, 2014, Massachusetts voters approved the Massachusetts Earned Sick Time Law at M.G.L. c. 149, § 148C which requires certain employers to provide "earned paid sick time" to qualifying employees in Massachusetts.  That law became effective on July 1, 2015. Plaintiffs have not implemented or complied with the ESTL because they believe that it is preempted by federal law. Defendant has declined their request to "provide a permanent commitment not to enforce" the ESTL against them.

Plaintiffs initiated this action by filing a complaint against Healey and the Massachusetts Office of the Attorney General in June, 2015 and an amended complaint naming Healey as the sole defendant in November, 2015.  Plaintiffs seek declaratory judgments that the ESTL is preempted by the RUIA (Count 1), the Railway Labor Act ("RLA") at 45 U.S.C. § 151, et seq. (Count 2) and the Employee Retirement Income Security Act ("ERISA") at 29 U.S.C. § 1140, et seq. (Count 3).  Plaintiffs also seek to enjoin Healey from enforcing or applying the ESTL against them.

In February, 2016, this Court convened a scheduling conference during which the parties agreed to bifurcate the action and litigate the RUIA claim in Phase 1 and the RLA and ERISA claims in Phase 2.

Plaintiffs moved for summary judgment on the RUIA claim in March, 2016. The Court allowed the union intervenors to participate in the action and move for summary judgment on the RUIA claim in May, 2016. Defendant submitted a motion for summary judgment on the same claim shortly thereafter. The parties stipulated that there are no material facts in dispute. The Court convened a hearing on those motions in July, 2016. Later that month, this Court entered an order allowing plaintiffs' motion for summary judgment and denying the motions for summary judgment of defendant and the union intervenors.

Defendant and the union intervenors appealed to the First Circuit Court of Appeals ("the First Circuit") in September, 2016. After briefing and argument, the First Circuit affirmed, in part, vacated in part, and remanded the case for further consideration. The parties filed renewed cross-motions for summary judgment earlier this year and the Court convened a hearing on those renewed cross-motions in July, 2018.

## II. Motions for summary judgment

### A. Legal standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is

appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B.   Application**

    **1.   Express preemption**

The Supremacy Clause of the United States Constitution provides that

> the laws of the United States . . . shall be the supreme law of the land . . . any Thing in the Constitution or laws of any State to the contrary notwithstanding.

U.S. CONST. art. VI, cl. 2.  State laws which conflict with federal law are preempted and "without effect". Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008).

Congressional purpose is the "ultimate touchstone" in every preemption case. Id.  A court considering the preemptive effect of an express preemption clause in a federal statute must assess the substance and scope of Congress's displacement of state law, id., in order to identify the matters that it did and did not intend to preempt, Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 541 (2001).  The inquiry commences with the statutory language "which necessarily contains the best evidence of Congress' pre-emptive intent". CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993).  The court may also consider the purpose, history and surrounding statutory scheme of the express

preemption clause. Mass. Delivery Ass'n v. Coakley, 769 F.3d 11, 17 (1st Cir. 2014).

If the preemption inquiry implicates the historic police powers of the state or a field traditionally occupied by the states, the court must apply the presumption against preemption which can be overcome by a finding of clear and unambiguous congressional intent to preempt state law. Altria, 555 U.S. at 77.

### 1.    Railroad Unemployment Insurance Act

Congress enacted the first version of the Railroad Unemployment Insurance Act in 1938 to establish a system of unemployment insurance for covered employees. R.R. Ret. Bd. v. Duquesne Warehouse Co., 326 U.S. 446, 448 (1946).  It amended the statute in 1946 to provide qualified employees with "unemployment benefits" and "sickness benefits" which would both be administered by the Railroad Retirement Board ("RRB"), § 352, and funded by contributions from employers, § 358.

The amended statute defines "benefits" as monetary payments to an employee with respect to his or her unemployment or sickness and sets the daily benefits rate at 60% of his or her daily rate of compensation at the last position held. § 351(l)(1)(benefits); § 352(a)(2)(daily benefit rate).  A qualified employee is entitled to "sickness benefits" which are

>       benefits . . . for each day of sickness after the 4th
>       consecutive day of sickness in a period of continuing
>       sickness[.]

§ 352(a)(1)(B)(i).

A "period of continuing sickness" is a period of 1) consecutive days of sickness or 2) successive days of sickness "due to a single cause without interruption of more than 90 consecutive days which are not days of sickness." § 352(a)(1)(B)(iii).

A "day of sickness" is a day on which the employee cannot work due to a physical, mental, psychological, nervous or pregnancy-related injury, sickness or condition <u>and</u> does not accrue or receive "remuneration". § 351(k).  The term "remuneration" 1) means "pay for services for hire", 2) includes earned income other than services for hire if the employee accrued it with respect to a particular day or days and 3) excludes money payments received pursuant to non-governmental plans for unemployment, maternity or sickness insurance. § 351(j).  An employee does not experience a "day of sickness" if he or she receives or will receive unemployment, maternity or sickness benefits under any other unemployment, maternity or sickness compensation law. § 354(a-1)(ii).

Section 363(b) of the RUIA contains an express preemption provision.  The first two sentences of § 363(b), titled "Effect on State unemployment compensation laws", state that:

> Congress makes exclusive provision for . . . the payment of sickness benefits for sickness periods after [1947], based upon employment (as defined in this chapter).  No employee shall have or assert any right to . . . sickness benefits under a sickness law of any State with respect to sickness periods occurring after [1947], based upon employment (as defined in this chapter).

§ 363(b). The statute defines "employment" to mean "service performed as an employee". § 351(g).

The third sentence in § 363(b) specifies that:

> Congress finds and declares that by virtue of the enactment of this chapter, the application of . . . State sickness laws after [1947], to such employment, except pursuant to [§ 362(g)], would constitute an undue burden upon, and an undue interference with the effective regulation of, interstate commerce.

§ 363(b). Section 362(g) sets forth a system of "mutual reimbursement [of] . . . [b]enefits also subject to a State law" under which the RRB and states can reimburse each other for any unemployment or sickness benefits paid to qualifying employees under the RUIA or state unemployment or sickness compensation laws for "services for hire other than employment". § 362(g).

### 2.  Massachusetts Earned Sick Time Law

The Massachusetts Earned Sick Time Law entitles qualified employees who work in the Commonwealth to accrue "earned sick time" at the rate of one hour for every 30 hours worked and to use that time 1) to care for themselves or their family members, 2) to attend their or their family members' routine medical appointments or 3) to address the psychological, physical or legal effects of domestic violence. M.G.L. c. 149,

§§ 148C(b),(c),(d)(1). Qualified employees can earn and use up to 40 hours of either "earned paid sick time" or "earned unpaid sick time" every calendar year. §§ 148C(d)(4),(6). Covered employers must compensate qualified employees for "earned paid sick time" at their regular hourly rates of compensation. § 148C(a).

### 3. First Circuit decision

The First Circuit affirmed, in part, this Court's decision, holding that the RUIA preempts subsection (c)(2) of the ESTL as applied to interstate rail carriers that employ workers in Massachusetts. The case was remanded for this Court to determine, in the first instance, whether any or all other sections of the ESTL might be applied to such employers. The First Circuit raised three potential questions that this Court may need to consider in order to resolve that issue on remand: (1) are any of the remaining sections of the ESTL themselves preempted by the RUIA, (2) are any remaining sections that are not so preempted nevertheless preempted by either the RLA or ERISA as alleged in the complaint and (3) should any sections of the ESTL be preserved by severing the preempted sections as applied to interstate rail carriers?

### 4. Scope of RUIA preemption

Plaintiffs assert that the text of the preemption clause is clear that the RUIA preempts all aspects of the ESTL including

-10-

subsections (c)(1), (c)(3) and (c)(4).  They contend that the ESTL defines the entire paid-leave benefit as "sick time", pointing first to the title of the statute's subsection which is "Earned sick time".  Plaintiffs also stress that the statute allows a covered employee to earn and use a total of 40 hours per year and that the block of 40 hours is not apportioned among the designated purposes in the statute but rather is a block of paid leave which is a "sickness benefit".  Finally, plaintiffs contend that the RUIA was intended to create a uniform federal scheme and that allowing new variations of sick leave that a state may devise to escape the preemptive scope of the RUIA would undermine that purpose.

Defendant and the union intervenors respond that subsections (c)(1), (c)(3) and (c)(4), which require paid time off for purposes other than an employee's own illness, do not conflict with the stated purposes the RUIA and are not preempted by that statute.  They suggest that the other provisions of the ESTL, including addressing the effects of domestic violence and family care, are so far outside the RUIA's scope that preempting them would broaden the RUIA beyond what Congress intended.

Plaintiffs further submit that the legislative history and purpose of the statute confirm that Congress intended to preempt state laws such as the ESTL.  They offer statements made by union representatives and an RRB Chairman during congressional

hearings, as well as excerpts from the Senate Report on the 1946 amendments, to show the RUIA was intended to address the need for "uniform federal regulation of the national railroad system, especially with respect to employment benefits" because labor agreements in the transportation industry frequently cut across state lines.  Plaintiffs claim that Congress and the railroads entered into an "implicit labor-management agreement", as reflected in the RUIA preemption clause, that the railroads would provide federal unemployment and sickness benefits but need not provide state-mandated benefits.

After careful consideration of the arguments presented, the Court concludes that the statutory text of the RUIA reflects a congressional intent to preempt the entirety of the ESTL's "earned sick time" scheme.

The first two sentences of the RUIA preemption provision in § 363(b) indicate that Congress, in enacting the RUIA, made "exclusive provision" for the payment of "sickness benefits for sickness periods" and prohibited employees from asserting rights to "sickness benefits under a sickness law of any State with respect to sickness periods". § 363(b).  Given that preemption provision, the Court must determine whether the "earned sick time" is a "sickness benefit" in cases where the sick time is earned for situations other than personal sickness (i.e., for family sickness, medical appointments or domestic violence).

-12-

Section 363(b) of the RUIA is clear: Congress intended RUIA to serve as the "exclusive" source of all sickness benefits for railroad employees and to preclude the employees from claiming rights to sickness benefits under any state sickness law.

The RUIA refers generally to "sickness benefits" and "sickness law", evincing the intent of Congress to apply the express preemption provision to all state sickness benefits and sickness laws, not just state sickness benefits which replicate the RUIA benefit scheme. The language of the preemption provision disclaims any intent to restrict the scope of preemption to state benefit schemes that mirrored the RUIA. See CSX Transp. v. Healey, 861 F.3d 276, 284 (1st Cir. 2017) (rejecting appellant's argument that RUIA preemption applies only to state benefits that are similar or comparable to the kind provided by the RUIA and making clear that "there is no anchor in the text of the preemption clause for limiting in this manner the type of state-mandated sickness benefits subject to preemption").

The plain reading of the ESTL confirms that the "earned sick time" provided for in subsection § 148C(c) comes within the RUIA's preemptive scope. In its definition section, the ESTL delineates the meaning of "earned sick time" as

> the time off from work that is provided by an employer to an employee, whether paid or unpaid, as computed under

>     subsection (d) that can be used for the purposes described
>     in subsection (c).

§ 148C. The statute provides for the provision of "up to 40 hours of earned paid sick time" in a calendar year, and does not distinguish or apportion the hours between the kinds of sickness benefits described in § 148C(c). The state legislature's determination that domestic violence and care for family members may fall within the scope of "earned sick time" is not inconsistent with the RUIA's preemption of any and all state sickness laws. In short, the breadth of the state law does not save it from RUIA preemption. Such a reading would allow a state to legislate creatively around the RUIA and thereby thwart the objective of Congress to create a uniform federal scheme of sickness benefits for railroad workers.

The defendant and union-intervenors' reliance on National Railroad Passenger Corp. v. Su, 289 F. Supp. 3d 1130 (E.D. Cal. 2017) is unpersuasive. This Court disagrees with the conclusion of that court that the RUIA preemption provision "does not clearly define the type of sickness provisions RUIA preempts" which led that court to rely on the legislative history to conclude that RUIA preemption did not apply to sickness benefits used for care of family members or seeking protection from domestic violence. Id. at 1137-38. Where the provisions of the statute are clear, legislative history cannot undermine the

meaning of unambiguous statutory text. In re Larson, 513 F.3d 325, 329 (1st Cir. 2008). The Court in the Su decision limited RUIA's preemption provision to what it described as a more "logical reading" of preempting "the general type of sickness laws Congress contemplated when adopting RUIA's preemption provision". Su, 289 F. Supp. 3d at 1136.

Reference to the purpose of the statute confirms the breadth of the express preemption provision. The RUIA was enacted to ensure "a uniform federal scheme" in the railroad industry and to protect interstate rail regulation from the burdens of state sickness law. See H.R. Rep. No. 75-2668 at 1 (1938); Healey, 861 F.3d at 282. The First Circuit expressly rejected a reading of the statute that would limit RUIA preemption to state benefits that are similar or comparable to the kind provided by the RUIA. Healey, 861 F.3d at 284 ("[Appellants] argue . . . that RUIA preemption applies only to state benefits that are similar or comparable to, or of the type provided by the RUIA. Of course, in making this version of their argument, the appellants and their amicus are adrift." (internal alternations and quotation marks omitted)).

A broad construction of the preemption provision of the RUIA is necessary to give effect to the congressional intent to create uniformity. Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992). To construe the RUIA preemption provision

```
```

narrowly would render it unworkable because states would be free to substitute directly their own policies creating "precisely the effect the preemption clause seeks to avoid: a patchwork of state . . . laws, rules and regulations". Tobin v. Federal Exp. Corp., 775 F.3d 448, 455 (1st Cir. 2014) (citing Rowe v. New Hampshire Motor Transport Ass'n, 552 U.S. 364, 372 (2008) (internal quotation marks omitted)).  Just as the court held in Su, defendant and the union intervenors rely on a Senate Report to contend that the RUIA does not apply outside the context of benefits for employees' personal sickness. Su, 289 F. Supp. 3d at 1137 (citing S. Rep. No. 79-1710 at 26 (1946) (clarifying that the goal of RUIA preemption was to protect employers from "duplicate liability")).  Defendant and the union intervenors assert that Congress did not intend to preempt all state sickness benefits but only those that are similar to the RUIA benefits.  The clear text of the preemption clause is to the contrary, however, because Congress chose to refer broadly to "sickness benefits", not limiting the scope to personal sickness benefits.

The clear text of the preemption provision and the congressional purpose support a determination that the RUIA preempts the entire state earned sick time scheme which governs "earned sick time" and is not limited to time that can be used exclusively for an employee's personal sickness.  Because the

Court finds that the RUIA preempts the remaining sections of the ESTL, it declines to reach the dormant commerce clause and severability issues raised as "potential questions" by the First Circuit.  Accordingly, plaintiffs' motion for summary judgment on its RUIA claim will be allowed and the cross-motions for summary judgment of defendant and the union intervenors will be denied.

### ORDER

For the foregoing reasons, plaintiffs' renewed motion for summary judgment on Count 1 (Docket No. 90) is **ALLOWED**, defendant's renewed cross-motion for summary judgment on Count 1 (Docket No. 93) is **DENIED** and the union intervenors' renewed cross-motion for summary judgment on Count 1 (Docket No. 95) is **DENIED.**

**So ordered.**

                                            /s/ Nathaniel M. Gorton_____
                                            Nathaniel M. Gorton
                                            United States District Judge

Dated August 10, 2018